THIRD DIVISION

March 30, 2001

No. 1--00--0239

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) 

)

RUDOLFO CARRERA, ) Honorable

) Stuart E. Palmer,

Defendant-Appellant. ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Following a stipulated bench trial, defendant Rudolfo Carrera was convicted of possession of a controlled substance with intent to deliver and sentenced by the circuit court to 15 years' imprisonment.  On appeal, defendant contends that the trial court erred in denying his second motion to quash arrest and suppress evidence because the 
evidence obtained at the time of his arrest was obtained in violation of his fourth amendment rights in that the Chicago police officers did not have official authority to arrest him in Franklin Park, Illinois, and the officers did not make a valid citizen's arrest.  Defendant also contends that the good faith exception to the exclusionary rule, requiring suppression of evidence improperly seized, did not apply to the actions of the Chicago police officers who arrested him in Franklin Park pursuant to a statute that was later declared unconstitutional.  For the reasons set forth below,  we reverse and remand for further proceedings.  

On August 26, 1997, Chicago police officers arrested defendant outside of his house in Franklin Park.  Defendant subsequently was indicted by a grand jury on three counts of possession of a controlled substance (cocaine) with intent to deliver.  Following the indictment, defendant filed a motion to quash arrest and suppress evidence, arguing that he was arrested by Chicago police officers without probable cause and that he had not freely consented to searches following his arrest.  On July 9, 1998, an evidentiary hearing was held during which several witnesses testified.  Thereafter, the trial court denied the motion.    

Defendant filed a second motion to quash arrest and suppress evidence, arguing that the Chicago police officers had exercised police power outside of their jurisdiction.
(footnote: -6)  Both sides submitted a supporting memorandum, but did not submit further evidence and relied on the testimony from the first suppression hearing as indicated below.  

Defendant testified that on August 26, 1997, after he had gone to a grocery store in the morning, he drove to a storage facility, entered the facility and took out a bag, and returned to his car carrying the bag.  He then drove home, parked his car in front of his house, exited the car, and moved toward the trunk.  After defendant had opened the trunk, a police officer approached him and told him to place his hands on his car.  The officer then took the bag from the trunk and handcuffed defendant.  In response to an inquiry by one of the officers, defendant stated that his car was parked in front of his house.   

Defendant further testified that the officers took him to the front door of his house, asked him for the key, and entered the house.  The officers gathered defendant's wife and children into the living room with defendant, and then they took him to the basement where he showed them the location of a scale.  The officers told him to sign some papers, which he signed without reading.  The officers then began searching the house.  Following the search, the officers took him to jail.  During cross-examination, defendant admitted that he did not tell the officers that he could not read the papers that he had signed.    

Defendant's wife, Rosa Carrera, testified that at approximately 12:30 p.m., when defendant returned home, she saw four police officers with him.  The officers asked her to gather the children into the living room, which she did.  Thereafter, the officers asked her husband what other things he had in the house, and he replied that he had a scale in the basement.  The officers took her husband to the basement and then returned and began searching the house.  

Joseph DiGiacomo testified that on August 26, 1997, he was a detective employed by the Chicago police department.  An informant gave him information that a Hispanic male named Rudolfo, residing at 3113 North Emerson in Franklin Park, Illinois, dealt drugs from his house and drove a gray Mercury Marquis.  On August 26, at 11 a.m., DiGiacomo, Sergeant DeAntonio and four other Chicago police officers, each in separate vehicles, conducted surveillance around defendant's house in Franklin Park.  DiGiacomo was not wearing a police uniform, but he did have a gun, a badge, and binoculars.  DiGiacomo admitted that the officers did not obtain a warrant prior to conducting the surveillance.  

DiGiacomo further testified that at 12:30 p.m., he saw defendant leave his residence and enter a vehicle parked in front of the house, and drive away.  The officers followed defendant to a storage facility in Schiller Park where defendant entered the facility.  The officers were able to communicate by using walkie-talkies and they had binoculars.  Officer Horton, one of the Chicago police officers participating in the surveillance, signaled that he saw defendant exit the storage facility with a bag which defendant placed in the trunk of his vehicle.    

DiGiacomo further stated that the officers then followed defendant back to his residence in Franklin Park.  The officers had not observed defendant commit any crimes up to this point.  As defendant was removing the bag from the trunk of his car, DiGiacomo drove up next to him, got out of his car, and informed defendant that he was a police officer.  DiGiacomo also stated that he had not received any information regarding the involvement of a storage locker.  Acting on a "hunch," DiGiacomo asked defendant what was in the bag, defendant replied, "Drug," and defendant handed the bag to him.  The other police officers "converged" upon defendant, they discovered that the bag contained cocaine, and DiGiacomo placed defendant under arrest.  DiGiacomo further stated that after defendant signed consent forms authorizing the search of his house and the storage facility, defendant was taken inside his house, and a search was conducted of the house.  The officers proceeded to the storage facility in Schiller Park, while defendant remained in his house, and they found cocaine in the storage locker.  The officers then notified the Schiller Park police, who later arrived at the storage facility.  

DiGiacomo and the other officers returned to defendant's house to transport him to a Chicago police station.  Franklin Park police arrived at the house before the Chicago police officers left with defendant.  On cross-examination, DiGiacomo stated that as defendant signed the documents authorizing the searches, defendant did not tell him that he could not understand the documents or that he could not read them without his glasses.  

The State moved for a directed finding on defendant's motion to quash the arrest and suppress evidence, which the trial court denied.  The State then called Chicago police officer Ricardo Herrera as a witness.  Herrera testified that he was able to converse with defendant in Spanish and that he recited defendant's 
Miranda
 rights to him.  Defendant indicated that he wanted to get off the street and go inside his home, defendant provided keys to enter the house, and the officers entered the house with defendant.  Herrara further stated that defendant's wife and three children were present in the home.  Herrera also stated that he presented defendant forms written in Spanish authorizing searches of his home and the storage locker which defendant signed.  Herrera remained with defendant and his family while the other officers searched the house.  The officers found more cocaine in the garage.  

Thereafter, the trial court denied defendant's motion, finding that while the officers did not make a valid citizen's arrest, the information that the officers had was sufficient, pursuant to a good faith exception to the fourth amendment exclusionary rule, to sustain the encounter that occurred between Officer DiGiacomo and defendant at his car.  The trial court also found that defendant voluntarily stated that he had drugs in his possession and handed them to the officer as he was approached, defendant willingly entered the premises to remove the scene from the street, and defendant subsequently signed consent forms to search the premises.   Defendant later waived his right to a jury trial, and the trial court conducted a stipulated bench trial on January 12, 2000.  The stipulated testimony was consistent with the testimony given by Officer DiGiacomo and the other witnesses at the first suppression hearing.  The stipulated testimony further indicated that after defendant executed signed consent forms to search his residence in Franklin Park, his garage, and a storage locker in Schiller Park, the officers found a triple beam scale, two 16-ounce jars of manitol used to cut cocaine, $15,000 in defendant's basement and two bags of cocaine in his garage.  Two bricks of cocaine were also found in the storage locker.  The total weight of the cocaine discovered was 1,981.3 grams (from the bag in the trunk of defendant's car and the amounts found in his basement and garage).  The total street value of the cocaine was $328,125.  

The trial court found defendant guilty on all three counts of possession of a controlled substance with intent to deliver.  Defendant then filed motions for acquittal and arrest of judgment and a new trial.  The trial court denied the motions and sentenced defendant to 15 years' imprisonment.  This appeal followed.  

Defendant contends that the trial court erred in not granting his motion to quash arrest and suppress evidence.  Defendant argues that because Public Act 89--404, amending the Illinois Municipal Code and permitting peace officers to make an extraterritorial arrest, was ruled unconstitutional and void 
ab
 
initio
 while his case was pending in the trial court, the Chicago police officers did not have authority to arrest defendant in Franklin Park under nonemergency conditions.  Defendant also argues that the actions of the police in effectuating the extraterritorial arrest here could not be "saved" as a valid citizen's arrest because the officers "asserted official authority" during the arrest.  

The State argues that the police officers effectuated a proper citizen's arrest.  The State claims that defendant voluntarily gave DiGiacomo the bag containing cocaine, giving DiGiacomo reasonable grounds to believe that defendant was committing a crime as required by the private citizen's arrest statute.  The State further argues that the officers did not use the power of their office to gather any evidence against defendant that would not have been available to private citizens.  For example, according to the State, receiving information from a private citizen informant and conducting surveillance with the use of binoculars, walkie-talkies, and radios is not a use of police power unavailable to private citizens.  Similarly, the State argues that DiGiacomo's announcement that he was a police officer was not a use of the power of his office because he was not in uniform and was merely introducing himself when defendant freely admitted that the bag he possessed contained drugs in response to DiGiacomo's open-ended question.  

Both parties agree that the standard of review here is 
de
 
novo
.  Although a court's ruling on a motion to quash arrest and suppress evidence generally is subject to reversal only if the ruling is manifestly erroneous, where the trial court has applied the law to uncontroverted facts, the case presents a question of law that is reviewed under a 
de
 
novo
 standard.  
People v. Krueger
, 175 Ill. 2d 60, 64, 675 N.E.2d 604 (1996).  Here, defendant relies on the undisputed facts, citing only the testimony of the police officers and not questioning the officers' credibility.  Review of this case, therefore, is 
de
 
novo
.  

Although not addressed by either defendant or the State in their briefs, based on our 
de
 
novo
 review of the legal issues presented on appeal, we feel compelled to consider whether the actions of the police officers here constituted a seizure of defendant.  If no seizure occurred because the encounter between the officers and defendant was consensual, the protections of the fourth amendment are not invoked.  The fourth amendment to the Constitution of the United States guarantees freedom from unreasonable searches and seizures by protecting against unreasonable governmental intrusions.  
People v. Neal
, 109 Ill. 2d 216, 221, 486 N.E.2d 898 (1985).  If there is no such unreasonable government intrusion, there is no search and seizure subject to the warrant clause of the amendment.  
Neal
, 109 Ill. 2d at 221.  When a police officer, through the use of physical force or show of authority, has in some way restrained the liberty of a citizen, the court may conclude that a "seizure" has occurred.  
Murray
, 137 Ill. 2d at 388, citing 
Terry v. Ohio
, 392 U.S. 1, 19 n. 16, 20 L. Ed. 2d  889, 905 n. 16, 88 S. Ct. 1868, 1879 n. 16 (1968).  F
our examples of circumstances which may be indicative of a seizure, even in a situation where the person did not attempt to leave, include: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  
Murray
, 137 Ill. 2d at 390, citing 
United States v. Mendenhall
, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980).  

Much of the testimony regarding the encounter between the police and defendant was provided by Officer DiGiacomo, who described the encounter as follows:

"Q [Defendant's counsel]. Then you approached him.  Is it your testimony that he handed you this bag? 

A [Officer DiGiacomo]. I identified myself as a police officer.  I said what do you have in the bag.  At this time he replied drugs and handed the bag to me. 

***

Q. When did you first--did you approach him on foot or in your vehicle?

A. On foot. I parked my--

Q. Where were you when you first saw him park his vehicle, where were you, how far from him?

A. I was down the street. *** When he went to retrieve the bag from the trunk, then myself and the other officers then converged on him.  

Q. When you say converged, how far were you from him when you first approached him?  

A. I was down at the end of the block.  And as he opened the trunk, reaching in for the bag, reaching in for whatever it was, that's when I started driving up.  I seen [
sic
] the bag come out and then I pulled over to the curb behind his vehicle.  I said police officer as I was exiting my vehicle."

When asked during cross-examination whether "there were a lot of police officers on the scene" when he approached defendant, DiGiacomo replied, "Well, everybody else that's on the paper with me, the other six officers, five officers, myself."  Additionally, Officer Herrera gave a brief description of the encounter, stating:

"What had happened we [the officers] approached and I got out of the car.  The detective [DiGiacomo] was actually at the front of the car, approaching toward this way.  I was approaching him as the defendant had his back to me.  So I saw him hand the bag over to him, but I wasn't close enough to actually hear the whole thing.  But I could hear as I was approaching, and obviously I'm making sure everything is secure in the area also."  

Based on this testimony, we find that the officers' actions, in fact, constituted a seizure.  While defendant was at the rear of his car, DiGiacomo drove his vehicle up to defendant.  Although the exact distance from defendant was not indicated in the testimony, DiGiacomo was close enough that he could immediately identify himself as a police officer to defendant as DiGiacomo was exiting his vehicle.  There was evidence that DiGiacomo had a badge and a gun at the time.  Also, the testimony indicated that five other officers, using their own vehicles, participated in the surveillance and were also converging on defendant's vicinity at the time of the encounter.  Although the positions and distance of these other officers are unclear from the record, other than the fact that Officer Herrera was approaching from behind defendant, we find that based on the totality of the circumstances here there was a sufficient show of authority by the threatening presence of several officers at the time of the encounter to constitute a seizure.  

We next address defendant's argument that this seizure could not be justified as a valid citizen's arrest.  
Under the common law, municipal and county police officers had "no authority to arrest a defendant outside the territorial limits of the political entity which appointed them to their office."  
People v. Lahr
, 147 Ill. 2d 379, 382, 589 N.E.2d 539 (1992).  The common law provided a single exception to this rule when the officers were in "fresh pursuit" of a suspected felon fleeing that jurisdiction.  
Lahr
, 147 Ill. 2d at 382.  That common law rule was modified by section 107--3 of the Illinois Code of Criminal Procedure, which provides:  

"Arrest by a Private Person.  Any person  may arrest another when he has reasonable grounds to believe that an offense other than  an ordinance violation is being committed."  725 ILCS 5/107--3 (West 1996).  

Pursuant to section 107--3, a police officer outside of his jurisdiction may make a warrantless arrest if the arrest constitutes a valid citizen's arrest.  
Lahr
, 147 Ill. 2d at 382.  When outside of his or her jurisdiction, a police officer's right to make an arrest is no greater than the right of a private citizen.  
Lahr
, 147 Ill. 2d at 382-83.  An extraterritorial arrest will not be upheld if in making the arrest the officer uses the powers of his office to obtain evidence not available to a private citizen outside of his jurisdiction.  
Lahr
, 147 Ill. 2d at 383.  
People v. Niedzwiedz
, 268 Ill. App. 3d 119, 122, 644 N.E.2d 53 (1994).  

Defendant has not cited to any authority on point in support of his argument on this issue, and our research reveals none.  However, the rationale of the cases the State relies upon in opposition to defendant's argument (
People v. Marino
, 80 Ill. App. 3d 657, 400 N.E.2d 491 (1980) and 
People v. Niedzwiedz
, 268 Ill. App. 3d 119, 644 N.E.2d 53 (1994)), are, in fact, supportive of defendant's argument.  

In 
Marino
, the defendant was arrested without a warrant for burglary in Wood Dale, DuPage County, Illinois, by Chicago police officers who had conducted surveillance of the defendant and an accomplice after the officers received a report that the defendant had committed a prior burglary.  Conducting a stakeout in a nearby apartment, the Chicago police witnessed the defendant enter the basement of an apartment building in Wood Dale and arrested the defendant outside of the building.  Stolen items were discovered following a postarrest search which the State intended to introduce at trial.  The defendant moved to suppress the evidence obtained following his arrest, arguing that his arrest was illegal because the Chicago police did not have authority to arrest him in DuPage County for a crime committed in that county.  
Marino
, 80 Ill. App. 3d at 659-60.  The State argued that the police officers did not lose their official authority to make an arrest merely because the arrest occurred outside the confines of their territorial jurisdiction.  The State also argued, in the alternative, that even if the officers lacked official authority to make the arrest, they made a valid citizen's arrest.  The trial court denied the defendant's motion, and he again raised the issue on appeal after he was convicted.  

The 
Marino
 court agreed that the Chicago police officers lacked official authority to arrest the defendant in DuPage county under the circumstances.  
Marino
, 80 Ill. App. 3d at 661.  Addressing the State's contention that the arrest was, in the alternative, a valid citizen's arrest, the 
Marino
 court also agreed that the trial court properly denied the defendant's motion to suppress, stating, "The relevant inquiry is *** whether or not the person attempting to arrest was authorized to do so by statute, in any capacity, even though that capacity may not be that which is claimed."  
Marino
, 80 Ill. App. 3d at 664.  
The 
Marino
 court further stated:

"In sum, we hold that a warrantless arrest effected by a police officer who asserts official authority to arrest which he does not have is nevertheless valid if an arrest made by a private person under the same circumstances would have been valid.  As it is clear that the arresting officers here 
had reasonable grounds to believe that defendant was committing a felony
, the arrest was valid as an arrest by private persons[.]" (Emphasis added.)  
Marino
, 80 Ill. App. 3d at 665.  

In 
Niedzwiedz
, the defendant was arrested in Bensenville, Illinois by a police officer from Elk Grove Village, Illinois.  While assisting another officer from Elk Grove with a traffic arrest in Elk Grove, a private citizen approached the defendant's subsequent arresting officer and informed him that he had almost been struck by the defendant's vehicle as the defendant drove from a nearby restaurant.  The citizen also stated that he followed the defendant to a gas station in Bensenville and witnessed him swerving on the road and exiting his vehicle.  The citizen insisted that the defendant was intoxicated.  
Niedzwiedz
, 268 Ill. App. 3d at 120.  The Elk Grove officer drove to the gas station in Bensenville where he saw a vehicle, matching the description he had been given, pull out of the station.  While following the vehicle, the officer witnessed the defendant swerve across the fog line and the center lane several times, requested assistance from another Elk Grove officer, and pulled the defendant over to the side of the road in Bensenville.  The officers arrested the defendant for driving under the influence of alcohol after the defendant failed several field sobriety tests.  Defendant was later found guilty by the trial court.  
Niedzwiedz
, 268 Ill. App. 3d at 121. 

On appeal, the 
Niedzwiedz
 court agreed with the trial court that the Elk Grove officer effectuated a proper citizen's arrest even though he did not have official authority because the arrest and offense were conducted in Bensenville.  The court disagreed with the defendant's argument that the officer exercised the "power of his office passively by wearing a uniform near his squad car at the scene of an arrest" when the private citizen approached the officer with the information regarding the defendant's driving while intoxicated.  The 
Niedzwiedz
 court noted that the officer had not "affirmatively [done] anything" and had only been approached by a citizen at that point.  The court also found that the officer did not utilize the power of his office to gather evidence unavailable to a private citizen when the officer called for assistance on his car radio.  The court found that asking for assistance was not gathering evidence and that citizens had access to such radio devices and phones.  
Niedzwiedz
, 268 Ill. App. 3d at 122-23.  

In summary, the 
Marino
 and 
Niedzwiedz
 courts found that the police officers did not use the power of their offices to gather information outside of their jurisdictions that was otherwise unavailable to private citizens.  The police officers conducted valid citizen arrests because they had gathered evidence, serving as the probable cause necessary to make the arrests, in a manner available to any citizen; 
i
.
e
., in 
Marino
, the officers were conducting a stakeout when they personally witnessed the defendant enter the basement of an apartment building, giving them, or any citizen, reasonable grounds to arrest the defendant for burglary, and in 
Niedzwiedz
, the officer witnessed the defendant swerving across the fog and center lines while driving, giving him, or any citizen, reasonable grounds to arrest the defendant.  

In the present case, unlike the circumstances in 
Marino
 and 
Niedzwiedz
, Officer DiGiacomo used the power of his office to collect the evidence necessary to give him reasonable grounds to arrest defendant.  As DiGiacomo saw defendant open the trunk of his car, DiGiacomo approached defendant and immediately identified himself as a police officer, even though he did not have official authority to question defendant as a Chicago police officer in Franklin Park.  It is undisputed that despite the informant's information that defendant dealt drugs from his home, the officers did not witness defendant commit any offense or crime during their surveillance.  They only saw defendant remove a bag from a storage facility, which was not mentioned by the informant, and return home.  At this point there was no reasonable grounds for a private citizen to stop or arrest defendant.  

Although the testimony at the suppression hearing indicates that defendant's response to Officer DiGiacomo's question regarding what was in the bag was that it contained drugs and that defendant handed the bag to him, this only occurred after DiGiacomo approached defendant and identified himself as a police officer.  It was only after this representation of official authority that defendant handed the bag to DiGiacomo, giving the officers the opportunity to discover the cocaine in the bag and giving them reasonable grounds to arrest defendant.  The other officers also  converged on defendant at about this time.  It is unlikely that defendant would have identified the contents of the bag and handed it to any citizen, who would not have had the right to check the contents of the bag.  This is not a situation, as in 
Marino
 and 
Niedzwiedz
, where the police obtained the evidence necessary for the arrest without the use of some official authority.  Because DiGiacomo obtained the evidence needed for the arrest by identifying himself as a police officer in an area outside of his jurisdiction, he was using a means to obtain evidence not available to an average citizen, and the officers, therefore, did not make a valid citizen's arrest here.  Accordingly, we find that the trial court properly ruled that the police did not make a valid citizen's arrest.   

Defendant also contends that the trial court erred in finding that the "good faith exception" to the "exclusionary rule" of the fourth amendment, established by the United States Supreme Court in 
United States v. Leon
, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), permitted the State to use the evidence "derived from the extraterritorial arrest" at defendant's trial because the Chicago police officers believed in good faith that the statute authorizing them to arrest defendant in Franklin Park was valid.  Defendant distinguishes 
Leon
, which involved an invalidated warrant, from the present case.  Defendant also argues that as 
extension of 
Leon
 in 
Illinois v. Krull
, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), to situations where police officers act in good faith on a 
statute
 that is subsequently ruled unconstitutional, was rejected by the Illinois Supreme Court in 
People v. Krueger
, 175 Ill. 2d 60, 675 N.E.2d 604 (1996).  Defendant maintains that because the 
Krueger
 court rejected application of the good faith exception to situations involving an unconstitutional statute
, the trial court erred in applying the exception here.  

The State contends that because the amendment created by Illinois Public Act 89--404 (P.A. 89--404), which, in part, gave police officers full police power in adjoining municipalities, was declared void due to the legislature's violation of the single subject rule, rather than because the amendment authorized unconstitutional searches and seizures, the good faith exception to the exclusionary rule of the fourth amendment 
still applies to the Chicago police officers' actions in the present case.  The State argues, therefore, that the trial court properly denied defendant's motion to quash arrest and suppress evidence because the arrest was proper and the evidence discovered as a result of the arrest was admissible.  

Prior to 1995, section 7--4--8 of the Illinois Municipal Code (Code) provided:

"The police of any municipality in such a police district may go into any part of the district to suppress a riot, to preserve the peace, and to protect the lives, rights, and property of citizens."  65 ILCS 5/7--4--8 (West 1994).  

Section 7--4--7 defined a "police district" as the territory "embraced within the corporate limits of adjoining municipalities within any county in this State[.]" 65 ILCS 5/7--4--7 (West 1996).  P.A. 89--404, effective August 20, 1995, amended section 7--4--8 to provide:

"The police of any municipality in such a police district have full authority and power as peace officers and may go into any part of the district to exercise that authority and power."  65 ILCS 5/7--4--8 (West 1996).  

While the present case was pending, our supreme court found that P.A. 89--404 was unconstitutional because it violated the single subject rule of the Illinois Constitution.  
People v. Reedy
,  186 Ill. 2d 1, 11, 708 N.E.2d 1114 (1999).  "When an act is determined to be unconstitutional because it violates the single subject rule, the effect is to render invalid each and every provision of the unconstitutional act regardless of whether the individual provisions in the act could pass constitutional muster."  
People v. Ciesler
, 304 Ill. App. 3d 465, 469, 710 N.E.2d 1270 (1999).  An act that is declared unconstitutional is void 
ab
 
initio
.  
People v. Manuel
, 94 Ill. 2d 242, 244-45, 446 N.E.2d 240 (1983). Thus, "[t]he effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment." 
People v. Gersch
, 135 Ill. 2d 384, 390, 553 N.E.2d 281 (1990). The Illinois General Assembly "reenacted" the 1995 version of section 7--4--8 (65 ILCS 5/7--4--8 (West 1994)) in P.A. 90--593, effective June 19, 1998.  Curative legislation may only be applied in a prospective manner.  
Reedy
, 186 Ill. 2d at 17-18.  

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of [an] illegal search and seizure." 
Illinois v. Krull
, 480 U.S. at 347, 94 L. Ed. 2d at 373
, 107 S. Ct. at 1165
.  The primary purpose of the exclusionary rule is to deter future unlawful police conduct, effectuating the guarantee of the fourth amendment against unreasonable searches and seizures.  
Krull
, 480 U.S. at 347, 94 L. Ed. 2d at 373
, 107 S. Ct. at 1165
.  The exclusionary rule is not intended, nor is it able, to cure an invasion of a defendant's rights which he has already suffered.  
Krull
, 480 U.S. at 347, 94 L. Ed. 2d at 373
, 107 S. Ct. at 1165
.  The rule operates as a safeguard of fourth amendment rights through its deterrent effect, rather than as a personal constitutional right of the party aggrieved.  
Krull
, 480 U.S. at 347, 94 L. Ed. 2d at 373
, 107 S. Ct. at 1166
.  Application of the exclusionary rule as a remedial device has been restricted to those situations where the rule's remedial purpose is effectively advanced.  
Krull
, 480 U.S. at 347, 94 L. Ed. 2d at 373
, 107 S. Ct. at 1166
.  

The parties in the present case rely on 
Leon
, 
Krull
, 
Krueger
, 
People v. McGee
, 268 Ill. App. 3d 32, 644 N.E.2d 439 (1994), and 
People v. Carlson
, 185 Ill. 2d 546, 798 N.E.2d 372 (1999)
, in support of their arguments.  In 
Leon
, the Supreme Court held that the exclusionary rule should not be applied to exclude evidence obtained by police officers who reasonably relied, under an objective standard, on a warrant issued by a neutral magistrate, even though the warrant ultimately was found to be defective.  
Leon
, 468 U.S. at 917, 82 L. Ed. 2d at 695
, 104 S. Ct. at 3417
.  The 
Leon
 court based its decision on three factors: (1) the exclusionary rule was historically designed to deter police misconduct rather than to punish errors by judges in issuing warrants; (2) there was no evidence presented that judges were inclined to ignore or subvert the fourth amendment; and (3) there was no basis for the Court to believe that the exclusion of evidence seized pursuant to a faulty warrant would deter judges issuing such warrants.  
Leon
, 468 U.S. at 916-17, 82 L. Ed. 2d at 694
, 104 S. Ct. at 3417
.  The 
Leon
 court further found that the intended deterrent effect of the exclusionary rule was absent when a police officer acted in good faith in obtaining a warrant from a magistrate and acted within its scope.  
Leon
, 468 U.S. at 920-21, 82 L. Ed. 2d at 697
, 104 S. Ct. at 3419
.  The 
Leon
 court noted the absence of any deterrent effect on the magistrate in applying the exclusionary rule because the magistrate was not an adjunct of the law enforcement team.  
Leon
, 468 U.S. at 917, 82 L. Ed. 2d at 695
, 104 S. Ct. at 3417
.  

In 
Krull
, the Supreme Court granted 
certiorari
 to consider whether the good faith exception to the fourth amendment exclusionary rule also applied when a police officer's reliance on the constitutionality of a statute is objectively reasonable, but the statute is later declared unconstitutional.  
Krull
, 480 U.S. at 346, 94 L. Ed. 2d at 373
, 107 S. Ct. at 1165
.  
Krull
 involved a Chicago police officer who inspected a wrecking yard, owned by the respondents, pursuant to a then-existing statute which required licensees, owning businesses selling motor vehicles and automotive parts, to permit state officials to inspect records at any time, day or night, and to allow inspection of the premises of the business to determine the accuracy of the records.  The officer discovered that the serial numbers of several of the vehicles indicated that they were stolen.  The owners were later arrested and moved to suppress the evidence seized from the yard, relying on a federal court ruling which held that the statute authorizing the warrantless administrative search of licensees was unconstitutional.  
Krull
, 480 U.S. at 342-44, 94 L. Ed. 2d at 
370-71, 107 S. Ct. at 1162-64
.  The trial court denied the defendant's motion. 

The case proceeded to the United States Supreme Court, which considered whether the good faith exception established in 
Leon
 should apply in situations where officers relied in good faith on a statute later declared unconstitutional.  Finding that the reasoning in 
Leon
 was equally applicable to the facts in 
Krull
, the 
Krull
 court similarly found that applying the exclusionary rule to suppress evidence would have little deterrent effect on a police officer's actions where the officer acted in objectively reasonable reliance on a statute.  
Krull
, 480 U.S. at 349-50, 94 L. Ed. 2d at 375
, 107 S. Ct. at 1166-67
.  Specifically, 
the 
Krull
 court stated that "'[p]enalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of fourth amendment violations.'" 
Krull
, 480 U.S. at 349-50, 94 L. Ed. 2d at 375
, 107 S. Ct. at 1167, quoting 
Leon
, 468 U.S. at 921, 94 L. E. 2d at 697, 107 S. Ct. at 3419.  The Court noted that police were the target of the exclusionary rule, not the legislature, and that there was no evidence that legislators, like judges, were inclined to subvert the fourth amendment.  
Krull
, 480 U.S. at 351, 94 L. Ed. 2d at 376
, 107 S. Ct. at 1168
.  The Court further held that it was adopting an "objective" standard of reasonableness, as opposed to a "subjective" standard, and that an officer cannot be said to have acted in good faith reliance upon a statute if a reasonable officer should have known that the statute was unconstitutional.  
Krull
, 480 U.S. at 355, 94 L. Ed. 2d at 379
, 107 S. Ct. at 1168
.  

Applying its reasoning to the facts of the case, the 
Krull
 court determined that the Chicago police officer acted in good faith on the unconstitutional statute where the statute allowed warrantless administrative searches in a single industry that the state had determined required extensive regulation.  
Krull
, 480 U.S. at 359-60, 94 L. Ed. 2d at 381-82
, 107 S. Ct. at 1172
.  Four justices, however, dissented, in part, because they felt that the majority's opinion gave the legislature a "grace period" during which the police could perform unreasonable searches in order to convict those who might otherwise have escaped, creating an incentive for the legislature to promulgate unconstitutional laws.  
Krull
, 480 U.S. at 366, 94 L. Ed. 2d at 385
, 107 S. Ct. at 1175
 (O'Connor, J., dissenting).  

In 
People v. Krueger
, 175 Ill. 2d 60, 675 N.E.2d 604 (1996), our supreme court considered whether section 108--8(b)(2) of the "no-knock" statute (725 ILCS 5/108--8(b)(2)(West 1994)), authorizing police officers to make a no-knock entry into premises where they had knowledge that a suspect kept a firearm, "violates constitutional guarantees against unreasonable searches and seizures."  
Krueger
, 175 Ill. 2d at 61.  In 
Krueger
, the police obtained a warrant to search the defendant's home based on information received from an informant that he had recently purchased drugs from the defendant at his home and that the defendant kept a gun there.  The judge issuing the warrant permitted the police to enter the home without knocking and announcing their office pursuant to the no-knock statute because the defendant was known to keep a firearm on the premises.  The defendant moved to quash his arrest and suppress evidence seized.  
Krueger
, 175 Ill. 2d at 62-63.  

The trial court ruled that the no-knock statute was unconstitutional and declined to follow 
Krull
, based on this court's decision in 
People v. McGee
, 268 Ill. App. 3d 32, 644 N.E.2d (1994), holding that to do so would violate the Illinois Constitution.  
Krueger
, 175 Ill. 2d at 63.  The 
Krueger
 court agreed that the no-knock statute was unconstitutional, and then addressed the issue of whether the evidence seized pursuant to the warrant based on that statute should be excluded.  The 
Krueger
 court ruled that the good faith exception to the exclusionary rule, recognized in 
Krull
, did not "comport" with article I, section 6, of the Illinois Constitution of 1970.  The 
Krueger
 court focused on Justice O'Connor's dissent in 
Krull
, which the court noted revealed several serious flaws in the 
Krull
 decision.  The 
Krueger
 court further held that it had the authority to interpret provisions of the state constitution more broadly than the United Stated Supreme Court interprets similar provisions of the federal constitution and found that the exclusionary rule arising out of article I, section 6 of the state constitution continued to "afford the protection abrogated by 
Krull
."  Because the Illinois exclusionary rule had been historically understood to bar evidence obtained as a result of an unconstitutional statute, 
so long as that statute purported to authorize an unconstitutional search or seizure
, the 
Krueger
 court declined to follow 
Krull
.  
Krueger
, 175 Ill. 2d at 75-76.  

In the present case, the trial court relied on 
People v. Carlson
, 185 Ill. 2d 546, 708 N.E.2d 372 (1999), in denying defendant's motion to quash arrest and suppress evidence.  In 
Carlson
, the police had obtained an anticipatory search warrant which was contingent upon acceptance of a package at the defendant's residence.  The defendant was arrested after a postal inspector discovered drugs, through the use of a trained dog, in a package addressed to the defendant.  After the defendant was arrested and the drugs seized pursuant to the execution of the warrant, anticipatory warrants were determined to be unauthorized by statute in Illinois in 
People v. Ross
, 168 Ill. 2d 347, 354, 659 N.E.2d 1319 (1995).  The defendant moved for reconsideration of her prior motion to suppress evidence, which the trial court granted, suppressing the evidence, and this court reversed.  
People v. Carlson
, 287 Ill. App. 3d 700, 708, 679 N.E.2d 791 (1997). 

In affirming this court, our supreme court agreed that anticipatory warrants were not authorized by statute, but it determined that such warrants did not violate either the federal or state constitutions.  
Carlson
, 185 Ill. 2d at 555.  Addressing whether the police officers' objectively reasonable reliance on the warrant 
permitted the admission of the evidence, the 
Carlson
 court distinguished both 
Krueger
 and 
Krull
 on the basis that they involved searches pursuant to statutes that were later determined to be 
constitutionally
 invalid, as opposed to a warrant that was later determined to be 
statutorily
 invalid.  Based on 
Leon
, the 
Carlson
 court further held that the police officers relied in good faith on the warrant issued pursuant to the statute that, prior to 
Ross
, could have supported a reasonable belief that it authorized anticipatory warrants.  
Carlson
, 185 Ill. 2d at 560-61.  

In the present case, it is undisputed that the Chicago police officers were not acting pursuant to a warrant issued by a neutral magistrate when they investigated and arrested defendant.  The issue here is only whether the police officers' "good faith" reliance on the constitutionality of the then-existing statute, authorizing police officers to exercise extraterritorial authority, permits the introduction of the evidence seized.  As we noted above, a statute that is ruled unconstitutional is considered void 
ab
 
initio
.  Because the statute here was declared unconstitutional while defendant's case was pending, we view the facts of the case as though the statute never existed.  The police officer's "good faith" reliance on the statute as it existed at the time of defendant's arrest, therefore, is irrelevant to our consideration. 

Because we have found that the police were not authorized to exercise their authority outside of the Chicago city limits, absent an emergency, which admittedly did not occur here, defendant's arrest and the seizure of evidence in Franklin Park were illegal.

We also briefly note, in its analysis of article I, section 6, of the Illinois Constitution of 1970, our supreme court, in 
Krueger
, refused to recognize the "good faith" exception to the fourth amendment exclusionary rule established in 
Krull
.  Accordingly, the good faith exception should not have been applied here.  Additionally, the trial court's reliance on 
Carlson
 was misplaced as that case involved the use of a anticipatory warrant which the 
Carlson
 court determined was not authorized by statute, whereas in the instant case the police 
acted pursuant to a statute that was declared unconstitutional.  

Because we find that the police officers here made an illegal arrest, we reverse the trial court's denial of defendant's second motion to quash arrest and suppress evidence as it applies to defendant's statement to Officer DiGiacomo that the bag taken from the trunk of defendant's car contained drugs and to the bag itself  and its contents.  That evidence should have been suppressed as it was obtained as a result of the improper seizure.  Accordingly, we remand this case to the trial court for further consideration, in light of this opinion, to determine whether the illegal arrest tainted the subsequent evidence recovered by the police from defendant's home, garage, and storage locker.  
Our supreme court has held that "[o]nce an illegal seizure has occurred, that illegality may infect and taint the fruits that subsequently resulted."  
People v. Brownlee
, 186 Ill. 2d 501, 519, 713 N.E.2d 556 (1999).  Although a defendant may have voluntarily given the police consent to search, the police may have obtained the consent by the exploitation of an illegal arrest and, in doing so, violated the defendant's fourth amendment rights.  
People v. Odom
, 83 Ill. App. 3d 1022, 1027, 404 N.E.2d 997 (1980).  A defendant's consent to search following an illegal detention may be found to have been tainted by the illegality and require suppression of any evidence found pursuant to the illegally obtained consent.  
People v. Delaware
, 314 Ill. App. 3d 363, 373, 731 N.E.2d 904 (2000).  

Because we are remanding this cause for further proceedings, we also find that the stipulated evidence that was presented at defendant's bench trial was sufficient to support his conviction.  We therefore conclude that there is no double jeopardy problem that would foreclose a retrial.  This conclusion must not be construed as a determination of guilt or innocence that would be binding on retrial if that becomes necessary.  See 
People v. Taylor
, 76 Ill. 2d 289, 309-10, 391 N.E.2d 366 (1979).  

For the reasons stated, this cause is remanded for a new hearing on defendant's second motion to quash arrest and suppress evidence, with directions to suppress defendant's statement to Detective DiGiacomo that the bag he was holding contained drugs  and to suppress the bag and its contents which were recovered by the police when they first approached defendant.  

Reversed and remanded, with directions.

CERDA and WOLFSON, JJ., concur.  

FOOTNOTES
-6:
This is the only motion at issue in this appeal.