NOTICE

Decision filed 01/26/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 130147

NO. 5-13-0147

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 12-DT-7 |
| | ) | |
| KATELYN M. BOZARTH, | ) | Honorable |
| | ) | Joe Harrison, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justice Goldenhersh concurred in the judgment and opinion.
Justice Welch dissented, with opinion.

**OPINION**

¶ 1     The defendant, Katelyn M. Bozarth, was charged with two counts of driving under the influence of alcohol. The defendant filed a motion to quash the arrest and suppress the evidence obtained against her, which the trial court denied after a hearing. At a bench trial, the defendant stipulated to the State's evidence, while maintaining her objection to the order denying her motion to quash and suppress evidence. The trial court found the defendant guilty on one count of driving under the influence of alcohol and ordered the defendant to one year of court supervision. The defendant filed a timely appeal. We reverse.

1

¶ 2                                    BACKGROUND

¶ 3    The following factual recitation is taken from a hearing held on the defendant's motion to quash arrest and suppress evidence. On January 27, 2012, at approximately 1:22 a.m., Trooper Adam Zimmerman was on routine patrol in a rural area of Wayne County. The officer testified that he was "looking for violations" when he observed the defendant's red Pontiac stopped at a four-way stop heading westbound. The officer, who was in an unmarked squad car at the four-way stop intersection headed eastbound, turned his squad car around and followed the Pontiac. The officer testified that the only reason he chose to follow the Pontiac was that it was the only vehicle in the area.

¶ 4    The officer followed the Pontiac for approximately one-half of a mile when he observed the vehicle turn north into a private driveway. There was a house approximately 100 yards north at the end of the private drive. When the officer did not see taillights going up to the house, he pulled into the private drive. As he was driving up the drive, he observed a pole barn on his right. The barn was approximately 50 yards from the public road. The officer observed the Pontiac parked behind the pole barn with its lights off. Upon seeing the Pontiac behind the barn, the officer pulled his vehicle behind it, approximately 1½ car's length away.

¶ 5    When the officer exited his unmarked car to make contact with the driver, he had his flashlight in hand and his gun drawn. The defendant rolled the window down. The officer asked the defendant if the property she had pulled onto belonged to her. The defendant responded that it was not her property nor did she know whose property it was. During this conversation, the officer detected a strong odor of alcoholic beverage coming

2

from the defendant's breath. The officer returned to his patrol vehicle and activated the emergency lights. He then returned to the Pontiac and asked the defendant to exit the vehicle to perform field sobriety tests. Upon completing the field sobriety tests, the defendant was placed under arrest for driving under the influence of alcohol.

¶ 6    The officer testified that when he initially turned his vehicle around to follow the Pontiac, he "had no real suspicion at that time." Rather, he followed the Pontiac to see if anything "might happen." When asked what suspicion the officer had when he saw the defendant turn onto the private lane, the officer stated:

"There's–I just–really just awkward. It was an awkward way to just pull off in a driveway and shut off your lights. It depends on–it entered my mind, is were they stealing something, maybe doing something involving anhydrous, making methamphetamine."

¶ 7    When asked what suspicion the officer had when he saw the defendant parked behind the barn, the officer stated:

"Um, there was not a residence in the immediate area of the barn. An individual pulled in behind a barn, and immediately shuts off the lights. Not knowing if they had seen me–I drive an unmarked squad car, so I didn't know if something was going on, or if they were trying to hide or not.

\*\*\*

I didn't know if there was any foul play going on, if they were trying to hide from me or not whenever they pulled up to the barn."

¶ 8    Officer Zimmerman also testified that at the time he pulled his unmarked car

3

behind the Pontiac, he was not aware of any infraction or violation of the law that the defendant had committed. Although the officer testified that the defendant was free to leave when he initially approached her, he acknowledged that had she left, he probably would have followed her and activated his lights.

¶ 9 At the end of Officer Zimmerman's testimony, defense counsel made a motion to continue the hearing until a later date. Although the trial court granted the motion, the record reveals that the hearing was resumed later the same day. The record on appeal does not include a transcript of the hearing after it was resumed, but a docket entry reveals that the defendant's motion to quash arrest and suppress evidence was denied. There is no mention in the docket entry, nor anywhere else in the record, that additional evidence was taken when the hearing was resumed; therefore, we presume that the trial court made its ruling on the evidence presented at the conclusion of the officer's testimony.

¶ 10 The stipulated bench trial was conducted on March 26, 2013, wherein the trial court found the defendant guilty on one count of driving while under the influence of alcohol and placed the defendant on one year of court supervision. This appeal ensued.

¶ 11                                   ANALYSIS

¶ 12 Before addressing the merits raised by the defendant, we note that the State asserts that this court lacks jurisdiction to consider the defendant's appeal since an order of court supervision may not result in a final judgment. Although the Illinois Constitution prohibits appeals from nonfinal judgments, it grants our state supreme court the authority to "provide by rule for appeals to the Appellate Court from other than final judgments."

4

Ill. Const. 1970, art. VI, § 6. "Our supreme court authorizes appeals from court supervision orders in Illinois Supreme Court Rule 604(b) (eff. July 1, 2006)." *People v. Love*, 2013 IL App (3d) 120113, ¶ 20. "Rule 604(b) provides a defendant 'may appeal from the judgment and may seek review of the conditions of supervision, or of the finding of guilt or the conditions of the sentence, or both.' " *Id.* (quoting Ill. S. Ct. R. 604(b) (eff. July 1, 2006)). "Clearly, Rule 604(b) provides a defendant the right to appeal both the finding of guilty and the conditions of supervision." *Id.* at ¶ 21. Accordingly, we conclude this court has jurisdiction and turn to the issues raised by the defendant on appeal.

¶ 13    The defendant argues, *inter alia*, that the trial court erred in denying her motion to quash arrest and suppress the evidence obtained against her where the officer did not have a suspicion based on reasonable, articulable facts that she had committed, or was about to commit, a crime when he seized her. "Although a court's ruling on a motion to quash arrest and suppress evidence generally is subject to reversal only if the ruling is manifestly erroneous, where the trial court has applied the law to uncontroverted facts, the case presents a question of law that is reviewed under a *de novo* standard." *People v. Carrera*, 321 Ill. App. 3d 582, 588 (2001), *aff'd*, 203 Ill. 2d 1 (2002).

¶ 14    The defendant contends that the officer seized her for fourth amendment purposes when he pulled in behind her vehicle on the private driveway and exited his squad car with his gun drawn, while the State maintains that the encounter began as a consensual one until the officer smelled alcohol on the defendant's breath.

¶ 15    "It is well settled that not every encounter between the police and a private citizen

5

results in a seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). "Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Id.* "An individual cannot be seized absent reasonable, objective grounds for doing so." *People v. Gherna*, 203 Ill. 2d 165, 186 (2003). The appropriate test to determine whether a person seated in a parked vehicle has been "seized" by the police is whether a reasonable person in the defendant's position would have believed he was free to decline the officer's request or otherwise terminate the encounter. *Luedemann*, 222 Ill. 2d at 550-51. "When a police officer, through the use of physical force or show of authority, has in some way restrained the liberty of a citizen, the court may conclude that a 'seizure' has occurred." *Carrera*, 321 Ill. App. 3d at 589.

¶ 16 We disagree with the State that the encounter began as consensual where the officer himself testified that when he exited his vehicle to make contact with the defendant, he had his gun drawn. This show of authority clearly indicates that the defendant was seized for fourth amendment purposes. *Carrera*, 321 Ill. App. 3d at 589. Furthermore, although the officer testified that when he initially approached the defendant she was free to leave, he acknowledged that had she left, he probably would have followed her and activated his lights. Effectively, the defendant was seized from the point where the officer pulled in behind her vehicle.

¶ 17 On appeal, the State speculates that the defendant may not have seen the officer's

6

gun when he approached her car. There is no evidence in the record that the defendant testified at the suppression hearing. Nevertheless, this argument is without merit as the seizure analysis "hinges on an objective evaluation of the police conduct and not upon the subjective perception of the individual approached." *Gherna*, 203 Ill. 2d at 178.

¶ 18    Since we have determined that the defendant was seized, we turn our attention to whether the seizure was reasonable. "Under *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to, commit a crime." *People v. Close*, 238 Ill. 2d 497, 505 (2010). "The investigatory stop must be justified at its inception." *Id.* The officer must be able to point to specific, articulable facts which, taken together with rational inferences, reasonably warrant the investigatory stop. *Id.* "The officer's suspicion must amount to more than an inarticulate hunch [citations], but need not rise to the level of suspicion required for probable cause [citation]." *Id.*

¶ 19    Here, the officer's uncontroverted testimony establishes that he did not have any suspicion of criminal activity when he initially began following the defendant's vehicle. In fact, he testified that he was "looking for violations" and that the defendant's vehicle was the only one in the area. The officer also testified that he was not aware that the defendant had committed an infraction or violation of the law at the time he pulled his unmarked car behind the Pontiac; rather, he testified that he followed the Pontiac onto the private drive to see if anything "might happen." Here, the evidence reveals that the officer could not articulate any facts to support a reasonable suspicion that the defendant had committed, or was about to commit, a crime that would justify the investigatory stop.

¶ 20 Alternatively, the State claims that the officer was acting in his community caretaking capacity when he followed the defendant's vehicle onto the private drive. Again, we disagree. "[C]ommunity caretaking refers to a capacity in which the police act when they are performing some task unrelated to the investigation of crime, such as helping children find their parents, mediating noise disputes, responding to calls about missing persons or sick neighbors, or helping inebriates find their way home." *People v. McDonough*, 239 Ill. 2d 260, 269 (2010). The officer's own testimony belies the claim that he was acting in a community caretaking capacity where he testified that it had entered his mind that the driver of the Pontiac might be hiding from the police, involved in theft, making methamphetamine, or foul play.

¶ 21                                    CONCLUSION

¶ 22 For the reasons stated, we reverse the trial court's denial of the defendant's motion to quash arrest and suppress evidence. As the State cannot prevail on remand without the evidence which we hold should have been suppressed, we also reverse the court's finding of guilt and the order placing the defendant on court supervision.


¶ 23 Reversed.


¶ 24 JUSTICE WELCH, dissenting.

¶ 25 I respectfully dissent from the opinion of my distinguished colleagues.

¶ 26 This is a classic case of a *Terry* stop by an Illinois State Police officer. *Terry* permits an officer to conduct an investigatory stop where there exists a reasonable

suspicion, based on specific and articulable facts, that the person detained has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

¶ 27    In this case, it was late at night in a rural area in southern Illinois and the defendant's car was the only vehicle on a public road in the area of the unmarked police car.  Out of curiosity, the officer followed the defendant's vehicle a short time when he observed the defendant turn into a private lane abruptly and apparently extinguished its lights.  The lane was longer than the length of a football field.  The officer did not see the car drive toward the house, so he turned into the lane.  He observed the car behind a pole barn, which was located approximately 175 yards from the house.  The car was parked and its lights were extinguished.  The officer stated:

> "There's–I just–really just awkward.  It was an awkward way to just pull off in a driveway and shut off your lights.  It depends on–it entered my mind, is were they stealing something, maybe doing something involving anhydrous, making methamphetamine."

The car's abrupt turn onto the private lane, the apparent extinguishment of the car's rear taillights far from the house, and the parking of the car behind a pole barn, again far from the house, justified an investigatory stop.

¶ 28    The officer stopped his car behind the defendant's car and went to the defendant's driver-side window, which she rolled down.  The driver told the officer that it was not her property, and the officer noticed the smell of an alcoholic beverage coming from her breath.  The driver was asked to perform a field sobriety test.  After the defendant failed the field sobriety test, he arrested her for driving while under the influence of alcohol.

¶ 29 The facts found by the trial court, the fact finder, encompass all of the elements of a *Terry* stop, and I would not suppress the evidence against the defendant under these circumstances. For the above reasons, I agree with the trial court and would affirm its ruling.

2015 IL App (5th) 130147

NO. 5-13-0147

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Wayne County. |
| v. | ) ) | No. 12-DT-7 |
| KATELYN M. BOZARTH, | ) ) ) | Honorable Joe Harrison, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:** January 26, 2015

---

**Justices:** Honorable Bruce D. Stewart, J.

Honorable Richard P. Goldenhersh, J., concurred
Honorable Thomas M. Welch, J., dissented

---

**Attorneys for Appellant**

Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy Defender, Sara D. Parrish, Assistant Appellate Defender, Maggie A. Heim, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864

---

**Attorneys for Appellee**

Hon. David M. Williams, State's Attorney, Wayne County Courthouse, 301 East Main Street, Fairfield, IL 62837, Patrick Delfino, Director, Lawrence M. Bauer, Deputy Director, Jay Paul Hoffmann, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Second District, 2032 Larkin Avenue, Elgin, IL 60123 (brief was prepared with the assistance of Marques Berrington, Third Year Law Student at The John Marshall Law School)