THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
PETER L. LAHR, Defendant-Appellee.

Second District   No. 2—89—1233

Opinion filed January 15, 1991.

REINHARD, P.J., dissenting.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals from the trial court's granting of defendant's motion to quash arrest and suppress evidence. We affirm.

We first note that defendant has not filed a brief. We will, therefore, consider this appeal under the guidelines set out in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

Defendant, Peter L. Lahr, was charged with the offense of speeding (Ill. Rev. Stat. 1989, ch. 95½, par. 11—601(b)), based on a radar reading procured by Officer Beyer of the Sleepy Hollow police department. Before trial, defendant filed several motions to strike the complaint and dismiss the charge against him, including a motion which based its prayer for relief on the fact that the offense and the radar surveillance

took place in unincorporated Kane County, seven-tenths of a mile outside the boundaries of the Village of Sleepy Hollow. The trial court construed the motion as one to quash arrest and suppress evidence and granted it. In granting the motion, the court found that, because the radar surveillance took place outside the village boundaries, the arresting officer lacked official authority to arrest defendant. The State does not contest this aspect of the court's ruling. However, the court further found that, by reason of the use of radar surveillance equipment, the officer was acting within his official capacity and not as a private citizen; therefore, the arrest was not legitimized by section 107—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 107—3 (arrest by private person)). It is this aspect of the trial court's order which the State now appeals.

■ A reviewing court will not disturb a trial court's decision on a motion to quash arrest and suppress evidence unless that decision is clearly erroneous. (*People v. Foskey* (1990), 136 Ill. 2d 66, 76.) We conclude that the trial court's findings of fact were not against the manifest weight of the evidence, nor was its decision manifestly erroneous.

■ Section 107—3 of the Code of Criminal Procedure states:

"Any person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." (Ill. Rev. Stat. 1989, ch. 38, par. 107—3.)

An extensive line of cases in Illinois has upheld the validity of extraterritorial arrests made by police officers who, lacking official authority, were found to have been authorized to make "citizen's arrests." (See, e.g., *People v. O'Connor* (1988), 167 Ill. App. 3d 42; *People v. Gupton* (1985), 139 Ill. App. 3d 530; *People v. Rowe* (1984), 128 Ill. App. 3d 721; *People v. Marino* (1980), 80 Ill. App. 3d 657.) Such arrests have been upheld even when the officers asserted official authority which they did not in fact possess. (See *Marino*, 80 Ill. App. 3d at 665; *Gupton*, 139 Ill. App. 3d at 533.) While the general rules promulgated in these cases are applicable to the case before us, the cases are factually distinguishable and provide only general guidance to us. We consider here whether the method used by the officer to gather information projected the arrest beyond the bounds of a citizen's arrest and into the arena of official action which was not warranted or permitted in this case.

The closest case factually to the case before us is *O'Connor* (167 Ill. App. 3d 42). In *O'Connor*, the police officer conducted a stationary radar surveillance from a position just outside the boundary of his jurisdiction. However, in *O'Connor*, the road under surveillance was within the officer's jurisdiction; in the case before us, both the officer's position

*and* the area under surveillance were outside the officer's jurisdiction. The *O'Connor* court held:

> "[T]he extraterritorial assertion of authority may be viewed as tainting the use of information gathered. However, the surveillance done here was of a roadway within Officer Taylor's jurisdiction. The use of radar equipment under such circumstances *** does not, in our opinion, constitute an impermissible assertion of extraterritorial power which could preclude the use of the information gathered." *O'Connor*, 167 Ill. App. 3d at 47.

■ Here, we conclude that the position of the officer outside of his jurisdiction and the use of the radar on a stretch of road outside the jurisdiction combine to constitute an impermissible assertion of extraterritorial power. By using the radar gun to clock defendant's speed while on duty and in a patrol car, Officer Beyer was acting in his official capacity as a police officer of the Village of Sleepy Hollow. The use of such equipment, in our view, taints the gathering of the information and its later use (see *O'Connor*, 167 Ill. App. 3d at 47) because the officer used the power of his office to gain access to evidence not available to private citizens. The trial court's findings, that the use of the radar was an official act by Officer Beyer and that Beyer had no authority to commit that act outside his jurisdiction, were not against the manifest weight of the evidence.

We are unpersuaded by the State's attempt to read the *O'Connor* case as supportive of the State's position. The State argues that Officer Beyer was monitoring a road that passed through his jurisdiction and that, because the area of surveillance was such a short distance from the boundary of that jurisdiction, it is apparent that defendant was also speeding within the jurisdiction. At a minimum, the record contains no information as to where defendant entered the road upon which he was caught speeding; we cannot assume that he even drove through the Village of Sleepy Hollow. Moreover, we cannot assume that, if defendant did drive through Sleepy Hollow, he drove at an illegal speed, or at what speed he drove. Finally, it requires a leap of logic to attempt to equate, as the State does, the surveillance of a road inside the jurisdiction and that of a road that happens to pass through the jurisdiction. Such purported logic would also allow an officer to arrest a motorist speeding the opposite direction down the road *into* town where, the State would argue, the motorist might continue to speed. Pursued to its logical extreme, the State's logic would allow a municipality to carry out radar surveillance almost anywhere in the State. While we encourage the prevention of crime in Sleepy Hollow, we cannot condone the projection of Sleepy Hollow's authority beyond its borders. The fact that the road be-

ing monitored passed through the officer's jurisdiction has no bearing on whether the officer had authority to monitor the road outside his jurisdiction.

We are similarly unpersuaded by the State's reliance on *Gupton* (139 Ill. App. 3d 530) and *Rowe* (128 Ill. App. 3d 721). Both *Gupton* and *Rowe* involved extraterritorial arrests for driving under the influence (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1) and other traffic violations. The officers in both cases were found to have made the arrests as private citizens despite the fact that blood and urine samples (*Gupton*) and a breathalyzer test (*Rowe*) were required of the defendants. The State now argues that the taking of the tests in *Gupton* and *Rowe* was more within the province of official police action than is use of a radar device; therefore, if those tests did not transform the arrests in *Gupton* and *Rowe* into official acts, neither should the use of radar. This argument ignores the rationale set forth in *Gupton* and *Rowe*, a rationale which we find inapplicable to the case before us. In both *Gupton* and *Rowe*, the tests were given *after* the arrests were made; the defendants were arrested based on conduct and other factors (such as the odor of alcohol and slurred speech) that were observed by the police. Once the legitimate arrests were made, the officers could act as law enforcement officers and request the defendants to submit to the tests pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1). *Gupton*, 139 Ill. App. 3d at 534.

In the case before us, Officer Beyer was acting in his official capacity *before* he made the arrest. Whereas Officer Beyer used the radar gun to gather evidence *before* making the arrest, the officers in *Gupton* and *Rowe* used the powers of their offices *after* legitimate arrests had been made. This distinction makes *Gupton* and *Rowe* inapplicable to this case.

We conclude that the trial court's finding that Officer Beyer acted in his official capacity in arresting defendant was not against the manifest weight of the evidence and that the order granting defendant's motion to quash arrest and suppress evidence was not manifestly erroneous. Therefore, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER, J., concurs.

PRESIDING JUSTICE REINHARD, dissenting:

The majority and I are in agreement that extraterritorial arrests made by police officers who lack official authority to arrest may nonetheless be authorized as a citizen's arrest pursuant to section 107—3

of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 107—3) and that a police officer may assert the authority of his office in effecting such an arrest (*People v. Marino* (1980), 80 Ill. App. 3d 657, 664). However, I disagree with the majority's holding that, in the instant case, the officer's use of a radar gun outside his municipal jurisdiction constitutes an impermissible extraterritorial assertion of authority which thereby "taints the gathering of the information and its later use *** because the officer used the power of his office to gain access to evidence not available to private citizens." 207 Ill. App. 3d at 421.

The court in *People v. O'Connor* (1988), 167 Ill. App. 3d 42, generally explored the issue of whether the extraterritorial assertion of authority by a police officer during pre-arrest investigation can invalidate an otherwise lawful citizen's arrest. In examining this question, the court reviewed the law in two other jurisdictions which abide by the general principle that a police officer cannot effect an extraterritorial citizen's arrest based on information which was obtained through the extraterritorial assertion of official authority. (*O'Connor*, 167 Ill. App. 3d at 46-47.) Without defining the overall parameters of the "extraterritorial assertion of authority" doctrine, the court in *O'Connor* held that, in that case, the use of a radar gun by an officer positioned outside of his jurisdiction to detect speeding by persons inside the jurisdiction was not an impermissible extraterritorial assertion of authority which would invalidate an otherwise lawful citizen's arrest. *O'Connor*, 167 Ill. App. 3d at 47.

Because it does not define the general applicability of the "extraterritorial assertion of authority" doctrine, *O'Connor* does not provide an answer to the precise question presented here: whether a police officer's extraterritorial use of a radar gun to detect speeders outside of his jurisdiction constitutes an impermissible assertion of authority to gain access to information not available to private persons. However, I believe the answer to this question can be found with reference to the same authority relied upon by the court in *O'Connor*.

In *Phoenix v. State* (Fla. 1984), 455 So. 2d 1024, the Florida Supreme Court examined the question of whether there was an improper pre-arrest assertion of investigative authority which would invalidate an otherwise lawful extraterritorial arrest by the police. This concept is referred to in Florida as the "under color of office" doctrine. (*Phoenix*, 455 So. 2d at 1025.) The court held that the extraterritorial use of police vehicles, including aircraft, to observe the occupants of a vehicle outside of the jurisdiction did not constitute action under color of office. The court noted with approval the district court

of appeal's statement that "[t]he evidence upon which the arrests were based was obtained before *confronting* any persons [outside the jurisdiction] and without any unlawful *assertion* of authority vis-a-vis *the occupants or a third party*." (Emphasis added.) (*Phoenix*, 455 So. 2d at 1026.) This is consistent with prior decisions under Florida law holding that the "under color of office" doctrine only applies where an officer actually *holds himself out* as a police officer or *openly asserts* his official position in order to observe the unlawful activity. *United States v. Ible* (5th Cir. 1980), 630 F.2d 389, 393.

I believe that here, as in *O'Connor, Phoenix* provides a sound basis for decision. The law of Florida is in accord with other jurisdictions in this regard. (See, *e.g.*, *United States v. Hernandez* (11th Cir. 1983), 715 F.2d 548, 551 (extraterritorial use of ship's radar held not to invalidate subsequent extraterritorial arrest under Federal common law's "under color of office" doctrine); *State v. Sunford* (Mont. 1990), 796 P.2d 1084, 1086 (officer's extraterritorial use of a radar gun, combined with clearly observable speeding, supported extraterritorial arrest for speeding). See generally Annot., 12 A.L.R.4th 318, 358—61 (1982).

The reason for disallowing the extraterritorial assertion of police authority leading to an otherwise valid citizen's arrest is, in my judgment, to prevent law enforcement officials from obtaining information through the assertion of official authority not available to a private citizen. The use of a radar gun is not the *assertion* of authority against someone, but only a *means* to investigate crime. Moreover, the use or possession of a radar gun is not restricted to law enforcement officers as opposed to private citizens.

I perceive the "extraterritorial assertion of authority" doctrine to preclude an officer outside his jurisdiction from *asserting* the authority of his office in the process of pre-arrest investigation while not requiring him to close his eyes to that which could be observed by a private citizen. For example, it would be impermissible for an officer acting as a private citizen outside of his jurisdiction to assert the authority of his office in order to stop an individual for questioning, to gain access to a private place, or to otherwise exercise other powers available only to law enforcement officials by statute, ordinance, or case law.

I further note that, while the record does not disclose whether the positioning of the radar gun outside of the jurisdiction was accidental or intentional, this fact is irrelevant to the analysis. Extraterritorial investigation without assertion of authority may occur not infrequently in situations where a suspect under surveillance may leave the municipal boundaries. See, *e.g.*, *Marino*, 80 Ill. App. 3d at 660.

As the only complained-of procedure found improper by the majority was the extraterritorial use of a radar gun, the use or possession of which is not restricted to authorized law enforcement officers, I would not find this to be an impermissible assertion of police authority which would invalidate a lawful citizen's arrest. Consequently, I would reverse the decision of the circuit court.