# Illinois Official Reports

## Appellate Court

*People v. Holmes*, 2015 IL App (1st) 141256

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID HOLMES, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-1256 |
| Filed<br>Rehearing denied | November 25, 2015<br>December 31, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-11423; the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Paul J. Connery, Assistant State's Attorneys, of counsel), for the People.<br><br>Amy P. Campanelli, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellee. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion.<br>Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, David Holmes, was arrested when a Chicago police officer observed a revolver in his waistband. After placing defendant under arrest, police also discovered that he did not have a Firearm Owner's Identification (FOID) card, and defendant was subsequently charged with, *inter alia*, two counts of aggravated unlawful use of a weapon (AUUW) for carrying a firearm without a valid FOID card (720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(C) (West 2012)).

¶ 2    Following defendant's arrest, the Illinois Supreme Court issued its decision in *People v. Aguilar*, 2013 IL 112116. Thereafter, defendant filed a motion to quash arrest and suppress evidence with respect to the two FOID card counts. He argued that his arrest was invalid, as the probable cause for his arrest was based on the portion of the AUUW statute found unconstitutional in *Aguilar*. After a hearing, the trial court granted defendant's motion.

¶ 3    The State appeals, arguing the trial court erred by granting defendant's motion to quash arrest and suppress evidence. For the following reasons, we affirm.

¶ 4                                      I. BACKGROUND

¶ 5    In June 2012, the State charged defendant with two counts of AUUW for carrying an uncased, loaded, and immediately accessible firearm (720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(A) (West 2012)), and two counts of AUUW for carrying a firearm without a valid FOID card (720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(C) (West 2012)). Following the decision in *Aguilar*, the State conceded that the two counts based on subsection (a)(3)(A) for carrying an uncased, loaded, and immediately accessible weapon (counts I and III) should be dismissed. The State entered a *nolle prosequi* on those counts.

¶ 6    In January 2014, defendant filed a motion to quash his arrest and suppress evidence[1] with respect to the two remaining AUUW counts, alleging that his arrest violated his right to be free from unreasonable search and seizure under the state and federal constitutions. He argued that police lacked probable cause to believe he was committing a crime. Defendant noted the decision in *Aguilar* and asserted that the good-faith exception to the exclusionary rule did not apply where police were enforcing an unconstitutional statute. In support of his assertion, defendant cited to *People v. Carrera*, 203 Ill. 2d 1 (2002).

¶ 7    A hearing on defendant's motion commenced in February 2014. At the hearing, Chicago police officer Barrera testified that he was working near the 63rd Street Beach at approximately 9 p.m. on June 8, 2012, when he observed that defendant had a revolver sticking out of his waistband. Barrera approached defendant, told him to place his hands on his head, and then reached into defendant's waistband and removed the revolver. Barrera's partner placed defendant under arrest. After defendant was arrested, another officer researched defendant's FOID card status. Barrera conceded that before arresting defendant, he did not know any information about defendant.

¶ 8    During arguments, defense counsel asserted that no probable cause existed "for a violation of any law," as the officer was investigating defendant for carrying a concealed gun

---

[1]Defendant later orally amended the motion to also ask for relief from the evidence seized.

in public, and the *Aguilar* court had found that portion of the AUUW statute unconstitutional. Defense counsel likened defendant's case to *Carrera*, positing that the supreme court in that case "basically ruled that officers cannot use the good faith exception when that good faith exception is based on an unconstitutional statute." The State responded that the gun was in plain view, the police officers' actions were not unreasonable, and *Aguilar* did not invalidate the FOID card provision of the AUUW statute.

¶ 9 The trial court held the officer lacked probable cause for defendant's arrest given that, if a statute is void *ab initio*, it is as if it never existed. The court noted defendant's case was "kind of unfortunate because the officer didn't do anything wrong at the time" and the officer could have effectuated a valid *Terry* stop (*Terry v. Ohio*, 392 U.S. 1 (1968)) and inquired right away whether defendant had a FOID card. However, the officer did not do so. Thus, the court granted defendant's motion.

¶ 10 The State filed a motion to reconsider the quashed arrest, arguing, *inter alia*, that *Carrera*,[2] like *Illinois v. Krull*, 480 U.S. 340 (1987), did not apply because those cases involved unconstitutional statutes that authorized warrantless searches, whereas defendant's case involved a criminal statute that was only found partially unconstitutional. The State also asserted that, even if the trial court found that *Krull* and *Carrera* applied, the court should nonetheless apply the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984). The State argued that the court should refuse to exclude evidence by the officers who reasonably relied on a then-valid statute when they arrested defendant. In his response, defendant reiterated that the police lacked probable cause to arrest him in light of *Aguilar*, as a criminal statute that is unconstitutional is void *ab initio*.

¶ 11 Following an April 2014 hearing, the trial court denied the State's motion to reconsider. Thereafter, the State filed a notice of appeal and a certificate of substantial impairment from the trial court's February 2014 and April 2014 orders pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Feb. 6, 2013).

¶ 12 II. ANALYSIS

¶ 13 On appeal, the State argues that the trial court erred by granting defendant's motion to suppress evidence. The State maintains that *Carrera* is distinguishable and the court should have recognized a good-faith exception to the exclusionary rule, as the officer was operating under the law in effect at the time of defendant's arrest and defendant's fourth amendment rights were not violated. U.S. Const., amend. IV. Further, the State contends, the good-faith exception should be applied pursuant to section 114-12(b)(2)(ii) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-12(b)(2)(ii) (West 2012)). Defendant responds that the court properly granted his motion to suppress evidence, as it is well settled that a finding of unconstitutionality on any ground renders a statute void *ab initio* and the good-faith exception to the exclusionary rule may not be applied to statutes that are void *ab initio*.

¶ 14 We apply a two-part standard of review when reviewing a ruling on a motion to quash arrest and suppress evidence. *People v. Almond*, 2015 IL 113817, ¶ 55. We afford great deference to the trial court's findings of fact and will reverse those findings only where they

_____

[2]In its motion, the State cited to the appellate decision in *People v. Carrera*, 321 Ill. App. 3d 582 (2001).

are against the manifest weight of the evidence. *Id.* However, we review *de novo* the court's ultimate ruling on whether the evidence should be suppressed. *Id.*

¶ 15 Before turning to the parties' arguments, we wish to set forth the pertinent United States Supreme Court and Illinois Supreme Court decisions governing this appeal.

¶ 16 A. The Supreme Court's Decisions in *Leon* and *Krull*

¶ 17 Both the fourth amendment of the United States Constitution and the Illinois Constitution of 1970 guarantee the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Where evidence is obtained in violation of the fourth amendment, the exclusionary rule precludes the use of such evidence against the defendant in a criminal proceeding. *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citing *Weeks v. United States*, 232 U.S. 383 (1914), and *Mapp v. Ohio*, 367 U.S. 643 (1961)).

¶ 18 In *Leon*, the Supreme Court concluded that the exclusionary rule did not bar the use of evidence obtained by officers who acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate that was ultimately found to be unsupported by probable cause. *Leon*, 468 U.S. at 900, 913. The Supreme Court explained the exclusionary rule was designed to deter police misbehavior and, further, it could discern no basis for believing that excluding evidence seized pursuant to a warrant would have a significant deterrent effect on the issuing judge or magistrate. *Id.* at 916. Moreover, the Supreme Court explained, where an officer's conduct is objectively reasonable, " 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that … the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' " *Id.* at 919-20 (quoting *Stone v. Powell*, 428 U.S. 465, 539-40 (1976) (White, J., dissenting)). Our supreme court subsequently adopted the *Leon* good-faith exception in *People v. Stewart*, 104 Ill. 2d 463, 477 (1984).

¶ 19 Following *Leon*, the Supreme Court in *Krull* extended the good-faith exception to encompass the situation wherein an officer acts in objectively reasonable reliance on a statute authorizing warrantless administrative searches, which is ultimately found to violate the fourth amendment. *Krull*, 480 U.S. at 342, 346. The statute at issue in *Krull* required a person engaged in certain types of automotive business to obtain a license from the Illinois Secretary of State, and a licensee was required to permit state officials to inspect his records " 'at any reasonable time during the night or day' " and to allow officials to examine the premises of his business to determine the accuracy of his records. *Id.* at 342-43 (quoting Ill. Rev. Stat. 1981, ch. 95½, ¶ 5-401(e)). Pursuant to the statute, an officer entered the respondents' automobile wrecking yard and discovered that three vehicles were stolen and the identification number on a fourth had been removed. *Id.* at 343. The respondents were charged with various criminal violations, and they filed a motion to suppress the evidence seized from the yard, noting a federal court had found the statute authorizing warrantless administrative searches of licensees unconstitutional. *Id.* at 344. The Supreme Court explained that applying "the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." *Id.* at 349. Further, the Supreme Court reasoned, it had been given no basis for believing legislators were inclined to act in contravention of fourth

amendment principles, nor had the respondents offered any reason to believe that applying the exclusionary rule would have a significant deterrent effect on legislators enacting unconstitutional statutes. *Id.* at 350-52.

### B. The Illinois Supreme Court's Decision in *Krueger*

Our supreme court, however, subsequently declined to adopt the *Krull* good-faith exception, concluding the Illinois Constitution barred its application. *People v. Krueger*, 175 Ill. 2d 60, 61 (1996). In *Krueger*, the supreme court considered a "no-knock" statute that allowed a judge to issue a warrant authorizing an officer to enter a person's home without first knocking and announcing his office when an occupant of the building had previously possessed firearms within a certain period of time. *Id.* at 64 (quoting 725 ILCS 5/108-8(b)(2) (West 1994)). After concluding the statute violated the defendant's constitutional rights to be free from unreasonable searches and seizures, the *Krueger* court turned to the State's argument that the good-faith exception recognized in *Krull* should apply. *Id.* at 69-70. In reviewing the *Krull* decision, the supreme court cited extensive portions of Justice O'Connor's dissent. *Id.* at 72. It noted that Justice O'Connor had persuasively distinguished *Leon* on two grounds. *Id.* First, Justice O'Connor stated that a " 'powerful historical basis' " existed " 'for the exclusion of evidence gathered pursuant to a search authorized by an unconstitutional statute.' " *Id.* (quoting *Krull*, 480 U.S. at 362 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.)). Such statutes were " 'the core concern of the Framers of the Fourth Amendment,' " and the exclusionary rule had also "regularly been applied to suppress evidence gathered under unconstitutional statutes." *Id.* (quoting *Krull*, 480 U.S. at 362-63 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.)) Second, the supreme court noted, Justice O'Connor found the aforementioned history showed that legislators often pose a serious threat to fourth amendment values. *Id.* Justice O'Connor's dissent also pointed out that applying the good-faith exception would provide "a 'grace period' for unconstitutional search and seizure legislation." *Id.*

The Illinois Supreme Court thus departed from its tradition of applying the lockstep doctrine and following Supreme Court decisions in fourth amendment cases. *Id.* at 74. The *Krueger* court explained that Illinois's exclusionary rule had "always been understood to bar evidence gathered under the authority of an unconstitutional statute [citations], so long as that statute purported to authorize an unconstitutional search or seizure (see *Michigan v. DeFillippo*, 443 U.S. 31 *** (1979) (recognizing a substantive-procedural distinction not at issue here; specifically holding that the fourth amendment exclusionary rule did not apply where an ordinance was held unconstitutional on vagueness grounds))." *Id.* at 74-75. Thus, the supreme court found that adopting the good-faith exception in *Krull* "would drastically change this state's constitutional law." *Id.* at 75. Further, in balancing the legitimate aims of law enforcement against citizens' rights to be free from unreasonable governmental intrusion, the supreme court concluded citizens' rights prevailed. *Id.* The *Krueger* court stated that recognizing a good-faith exception to the state exclusionary rule would "provide a grace period for unconstitutional search and seizure legislation, during which time our citizens' prized constitutional rights can be violated with impunity." *Id.*

Subsequent to *Krueger*, the supreme court issued its decision in *Carrera*, in which it refused to apply the good-faith exception to the defendant's case based on the void *ab initio* doctrine. *Carrera*, 203 Ill. 2d at 16. In *Carrera*, Chicago police officers arrested the defendant outside of Chicago pursuant to an extraterritorial jurisdiction arrest statute that was later declared unconstitutional and void *ab initio* for violating the single-subject rule. *Id.* at 3, 8, 16. The defendant filed a motion to quash his arrest and suppress evidence, maintaining the officers lacked authority to arrest him outside of Chicago. *Id.* at 7. On appeal, the State argued, *inter alia*, that the good-faith exception to the exclusionary rule should apply, as the officers did not violate the defendant's substantive constitutional rights when effectuating the extraterritorial arrest. *Id.* at 13. While acknowledging the State's arguments, the *Carrera* court stated it was electing to resolve the case "on narrower grounds," finding the void *ab initio* doctrine dictated the result it reached. *Id.* at 13-14. It noted that a statute that is unconstitutional is void *ab initio* and confers no right, imposes no duty, and offers no protection. *Id.* at 14. Instead, "[i]t is as though no such law had ever been passed." *Id.* The *Carrera* court further stated that the void *ab initio* doctrine applied to both statutes deemed unconstitutional for violating substantive constitutional guarantees as well as statutes adopted in violation of the single-subject clause of the constitution. *Id.* at 14-15.

Our supreme court thus refused to apply the good-faith exception to the defendant's case, concluding that to do so "would run counter to our single-subject clause and void *ab initio* jurisprudence–specifically, that once a statute is declared facially unconstitutional, it is as if it had never been enacted." *Id.* at 16. The *Carrera* court explained that giving effect to the historical fact that the amendment existed when the defendant was arrested "would effectively resurrect the amendment and provide a grace period *** during which our citizens would have been subject to extraterritorial arrests without proper authorization." *Id.*

Justice Garman authored a dissent in which Justices Fitzgerald and Thomas joined. The dissent argued that the majority did not answer the narrow question posed by the State, *i.e.*, "whether the good-faith exception to the exclusionary rule applies when officers relied on an apparently valid statute when they made an arrest that, while unlawful, did not violate the individual's state or federal constitutional rights." *Id.* at 17 (Garman, J., dissenting, joined by Fitzgerald and Thomas, JJ.). According to the dissent, the majority obscured the distinction "between quashing an arrest because it was not authorized by a valid statute and applying the exclusionary rule to suppress evidence that was obtained in violation of a defendant's right to be free from unreasonable search and seizure." *Id.* The dissent agreed that the statute upon which the officers relied was void *ab initio* and explained that the effect of finding the statute unconstitutional on single-subject grounds was to return the law to its status quo *ante*. *Id.* at 18. Thus, to resolve the State's question, the dissent stated that the majority should have applied the earlier version of the statute and common law regarding extraterritorial arrests. *Id.* The dissent noted that the officers' actions in arresting the defendant violated the preexisting statute. *Id.* at 23. However, "the question of whether a search or arrest is legal is entirely separate from the question of whether evidence derived from that search or arrest should be excluded." *Id.* at 22. According to the dissent, the exclusionary rule applied (1) when suppressing the evidence would further its purpose of deterring police misconduct or (2) where giving effect to search and seizure legislation that violated the fourth amendment or state constitution would permit citizens' constitutional rights to be violated. *Id.* The dissent

concluded that although the seizure of the defendant was unlawful, the exclusionary rule did not apply because the seizure did not violate the defendant's state or federal constitutional rights, nor did the officers willfully violate the governing statute. *Id.* at 24.

¶ 27 Further, the dissent opined that even if the exclusionary rule applied, the evidence should have been admitted based on the officers' good-faith reliance on the then-applicable statute. *Id.* at 25. The dissent explained as follows.

> "Our concern in *Krueger* was with a statute authorizing police conduct that was, in itself, unconstitutional. This case does not pose the same threat to liberty as the statute at issue in *Krueger*, which purported to authorize unconstitutional no-knock entries by the police when executing a search warrant. Recognizing a good-faith exception for action taken by the police pursuant to a statute authorizing certain extraterritorial arrests, but enacted in violation of the single subject rule, would not subject the citizens of Illinois to 'a grace period *** during which time *** constitutional rights can be violated with impunity.' " *Id.* at 25-26 (quoting *Krueger*, 175 Ill. 2d at 75-76).

¶ 28                              D. Whether the Evidence Should Be Suppressed in This Case

¶ 29 Having reviewed the aforementioned decisions, we conclude the trial court properly suppressed the evidence in this case. As previously detailed, our supreme court in *Carrera* stated that a facially invalid statute is void *ab initio*. *Id.* at 14 (majority opinion). In other words, "[i]t is as though no such law had ever been passed." *Id.* The *Carrera* court further stated that the void *ab initio* doctrine applies both to statutes that "are unconstitutional because they violate substantive constitutional guarantees" and statutes that are unconstitutional because they violate the single-subject clause. *Id.* at 15. The *Carrera* court then went on to state that "to apply the good-faith exception would run counter to our single-subject clause and void *ab initio* jurisprudence–specifically, that once a statute is declared facially unconstitutional, it is as if it had never been enacted." *Id.* at 16.

¶ 30 Based on the *Carrera* court's language, we conclude the void *ab initio* doctrine precludes the application of the good-faith doctrine in defendant's case. The supreme court in *Aguilar* found the portion of the AUUW statute pursuant to which defendant was arrested unconstitutional on its face. Thus, that statute was void *ab initio*. See *id.* at 14. As the *Carrera* court explained, applying the good-faith exception to defendant's case would "run counter to *** void *ab initio* jurisprudence." *Id.* at 16. Further, the *Carrera* court stated that giving "legal effect" to the fact that the prior statute existed in the defendant's case would "effectively resurrect" the statute "and provide a grace period *** during which our citizens would have been subject to extraterritorial arrests without proper authorization." *Id.* The same concern with a "grace period" is implicated on the facts of our case, where individuals would have continued to be subject to arrests for violating the portion of the AUUW statute that was invalidated in *Aguilar*.

¶ 31 The State contends that *Carrera* is distinguishable. It maintains that the defendants in *Carrera*, *Krueger*, and *Krull* were each subject to fourth amendment violations based on statutes that gave police unconstitutional search and seizure authority. It is true that the statutes at issue in *Carrera*, *Krueger*, and *Krull* were all procedural statutes providing expanded authority to law enforcement officials regarding either the search or arrest of individuals, whereas the AUUW statute was a substantive statute. However, the supreme court in *Carrera* drew no distinction between procedural and substantive statutes. To the

contrary, the *Carrera* court used expansive language, stating that the void *ab initio* doctrine applied both to legislative acts that were found unconstitutional for violating substantive constitutional guarantees as well as those adopted in violation of the single-subject clause. *Id.* at 15. The *Carrera* court further stated that applying "the good-faith exception would run counter to our *** void *ab initio* jurisprudence–specifically, that once a statute is declared facially unconstitutional, it is as if it had never been enacted." *Id.* at 16.

¶ 32    We acknowledge, as the State points out, that the Code allows for the admission of evidence obtained pursuant to an arrest for a substantive statute that is later invalidated. Specifically, section 114-12(b)(2)(ii) of the Code provides that evidence shall not be suppressed where a court determines the evidence was seized by an officer acting in good faith, and "good faith" is defined, in relevant part, as existing when an officer "obtains evidence *** pursuant to a warrantless search incident to an arrest for violation of a statute or local ordinance which is later declared unconstitutional or otherwise invalidated." 725 ILCS 5/114-12(b)(2)(ii) (West 2012). Our supreme court has stated that section 114-12(b)(2) is a codification of *Leon. People v. Carlson*, 185 Ill. 2d 546, 560 (1999). In *Carlson*, the supreme court applied the good-faith exception to the use of an invalid anticipatory search warrant. *Id.* at 561. The *Carlson* court cited to section 114-12(b)(2)(i) of the Code, which defines "good faith" as existing when an officer obtains evidence pursuant to a search or arrest warrant from a neutral and detached judge, which the officer reasonably believed to be valid. *Id.* at 560 (quoting 725 ILCS 5/114-12(b)(2)(i) (West 1996)).

¶ 33    The *Carrera* court did not mention section 114-12(b)(2)(ii) of the Code in its opinion, and its broad language regarding the void *ab initio* doctrine made no exception for evidence obtained in a search incident to an arrest for a statute later found unconstitutional. We further note that the statute was not mentioned in *Krueger*. While it can be argued that section 114-12(b)(2)(ii) has been invalidated by *Krueger* and *Carrera*, that has not explicitly been done. We do not reach that question here as we are bound to follow the majority opinion in *Carrera*. We leave it to further jurisprudence as to how the conflict between the void *ab initio* doctrine and the statute in question should ultimately be resolved.

¶ 34    The State also relies on *DeFillippo*, positing that it is "especially relevant" as it was cited in *Krueger*, which was in turn cited by the supreme court recently in *People v. LeFlore*, 2015 IL 116799. In *DeFillippo*, the Supreme Court concluded that suppression was not warranted where a defendant was arrested for violating an ordinance that was later found unconstitutionally vague on its face. *DeFillippo*, 443 U.S. at 35, 37-38. The Supreme Court in that case concluded that probable cause existed for the defendant's arrest, rejecting the idea that the officer should have been required to anticipate that a court would subsequently find the ordinance unconstitutional. *Id.* at 37-38. The *DeFillippo* Court explained that "[p]olice are charged to enforce laws until and unless they are declared unconstitutional," and "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Id.* at 38. The *DeFillippo* Court also distinguished prior cases in which it had held the exclusionary rule required suppression of evidence obtained in searches that were carried out in reliance on statutes purportedly authorizing those searches without probable cause or a warrant. *Id.* at 39. The Court explained that those statutes, "by their own terms, authorized searches under circumstances which did not satisfy the traditional warrant and probable-cause requirements of the Fourth Amendment." *Id.* By contrast, the Court explained, the ordinance in

respondent's case "did not directly authorize the arrest or search." *Id.* Instead, the officer had probable cause to believe the respondent was committing an offense in his presence, the State's general arrest statute authorized the respondent's arrest independent of the ordinance, and the subsequent search "was valid because it was incidental to that arrest." *Id.* at 40.

¶ 35    We note that the Seventh Circuit Court of Appeals also recently concluded that an officer had probable cause to search the car of a defendant, who was found guilty of possessing a firearm as a felon, even though Chicago's handgun ban and Illinois's ban against the possession of guns outside the home were subsequently invalidated. *United States v. Charles*, 801 F.3d 855, 858, 861 (7th Cir. 2015). There, a witness called 911 to report that she saw a gun in the defendant's waistband, and a dispatcher broadcasted that information over the police radio. *Id.* at 858. The Seventh Circuit noted that at the time, Chicago had a comprehensive handgun ban and Illinois prohibited carrying concealed guns in public unless they were unloaded and enclosed in a container. *Id.* at 860-61. The *Charles* court concluded that the police had probable cause to believe that the defendant had violated the Chicago ordinance and Illinois statute and that evidence of those crimes could be found in his car. *Id.* at 861. The Seventh Circuit explained that although Chicago's ban and Illinois's concealed-carry law were both subsequently invalidated, "the '[p]olice are charged to enforce laws until and unless they are declared unconstitutional,' so a search based on a violation of a law later declared unconstitutional does not necessarily violate the Fourth Amendment. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Although [the defendant] could not be punished for violating an unconstitutional statute or ordinance, unless a law is 'grossly and flagrantly unconstitutional,' a police officer conducting a search may reasonably rely on it for Fourth Amendment purposes. *Id.*" *Id.*

¶ 36    We recognize that both *DeFillippo* and *Charles* contain facts similar to our case. Nonetheless, we are bound by the supreme court's decision in *Carrera* and the void *ab initio* doctrine. As previously detailed, the supreme court explicitly stated that a statute that is unconstitutional on its face is void *ab initio* and that applying the good-faith exception "would run counter to our *** void *ab initio* jurisprudence–specifically, that once a statute is declared facially unconstitutional, it is as if it had never been enacted." *Carrera*, 203 Ill. 2d at 16. As a result of the Illinois void *ab initio* doctrine, we are therefore in the unique position of having to hold that the same exact conduct could establish probable cause if a case was brought in the federal system but not if it was brought in our state courts.

¶ 37    The State also relies on *LeFlore*, claiming that although the supreme court in that case considered the good-faith exception in the context of judicial precedent, its discussion of the exception is nonetheless instructive in our case. The State quotes various portions of the *LeFlore* decision, such as its reiteration that the exclusionary rule has been restricted to those "unusual cases" in which "it can achieve its sole objective: to deter future fourth amendment violations." (Internal quotation marks omitted.) *LeFlore*, 2015 IL 116799, ¶ 22. However, the fact that *LeFlore* involved invalidated judicial precedent and not an invalidated statute is a crucial distinction, as the *Carrera* decision makes clear that statutes that are unconstitutional on their face are void *ab initio* and that the good-faith doctrine cannot be applied to statutes that are void *ab initio*. See *Carrera*, 203 Ill. 2d at 15-16. Accordingly, *LeFlore* does not support the State's position that reversal is warranted in this case.

¶ 38    In sum, we conclude the trial court properly granted defendant's motion to quash his arrest and suppress evidence.

¶ 39                                   III. CONCLUSION

¶ 40    For the reasons stated, we affirm the trial court's judgment.

¶ 41    Affirmed.